Good morning, Your Honor. May it please the Court. My name is Margarita Salazar. My co-counsel, Corey Sorrell, and I represent Dr. Douglas Hopper in this appeal. We respectfully request two minutes for rebuttal by co-counsel, and I will keep time. The sole issue before the Court today, in this case, is whether arbitral immunity applies to protect the AAA, the American Arbitration Association, from claims for false advertising. The District Court concluded that it does, but the District Court misapplied the test for arbitral immunity. Instead, it determined that arbitral immunity must apply because, and I'll quote, finding otherwise would allow litigants to circumvent arbitral immunity and the protections it affords by asserting a claim for bias that is merely cloaked as a false advertising claim. The record at page 12. This is error as a matter of law. To determine whether a claim triggers arbitral immunity in the first instance, the Court must apply the functionality test initially set forth in the Tenth Circuit in Pfannenstiel, pardon me if I mispronounce the name of the case, and as followed in this Court in Sachs v. Dietrich. According to the test cited by the District Court, in its own order, the pivotal question, and I'm quoting, is whether the claim at issue arises out of a decisional act. Record at page 11. The District Court further confirmed that the functionality test, by quoting the test as follows. Again, and I apologize for quoting, but this is important because the language is key here. If the claim effectively seeks to challenge the decisional act of an arbitrator or arbitration panel, then the doctrine of arbitral immunity should apply. If not, then the doctrine would not apply. This is the test for determining whether arbitral immunity is triggered in the first instance. But here, the District Court failed to do so. He did not ask these very key questions that the District Court articulated in its own order. Had the Court properly applied the test, it necessarily would have seen that Dr. Hopper's claims here for false advertising as against the American Arbitration Association neither arise out of nor actually seek to challenge any decisional act of any arbitrator or the Arbitration Association. Instead, the facts giving rise to the claim for false advertising occurred long before any arbitrators were even impaneled, much less any arbitral decision having had been taken place. The Court in Sachs v. Dietrich determined that arbitral immunity is not and cannot have a limitless and absolute, is not a limitless and absolute right. Excuse me. Instead, the acts at issue must be within the scope and the duties as well as the jurisdiction of the actor. Do any of your claims fall within the scope of arbitral immunity? At this point, Your Honor, the only claims remaining is the claims for false advertising. So we will proceed on that single claim. It's a narrow issue today, so the answer would be no. Dr. Hopper's claims stem from a purely commercial activity of the sponsoring organization and not from any decisional act at all. We know that in Wiseman v. NASD, an 11th Circuit case, the Court there held that commercial functions are not covered under the doctrine of arbitral immunity. As such, our position here is that one thing has nothing to do with the other. Because the District Court misapplied the doctrine of arbitral immunity and failed to ask the relevant questions that it self-articulated in its order, we respectfully request and ask this Court to reverse the District Court's decisions and remand the matter. I will take any questions if there are any further questions of me from the panel of judges. What precisely is your claim for false advertising? The claim for false advertising is that Dr. Hopper was harmed and he should be entitled under the California statute 17-217-500 and that he should be entitled to at least restitution because the claims that were stated in the advertisements that were posted by the AAA and not by the judges, the statements were false. I'll remind the Court here. What were the statements precisely? The statements were that the panel were neutral, that the panel were unbiased, and there were other allegations that turned out, as Dr. Hopper alleges, were not true. Well, I'm just wondering to what extent in pursuing your claim that the arbitrator was biased and not impartial, you would be necessarily encroaching into the arbitrator's decision-making function. Yes, Your Honor. I think that there is a very fine line in this particular example. I think the issue that the lower court had is that this would amount to a collateral attack on a decision. The claims for false advertisement, if that is taken to its complete end and it goes to jury and it goes all the way to the end, the decision there and the ruling there would have absolutely no effect on the award and the judgment in the other case, in the arbitral matter. So I'll be clear. The arbitration, the remedies for Dr. Hopper would be to file a petition to vacate the award, which he has done in the Superior Court and now is actually pending before the California Court of Appeal, and that hearing is actually happening next week. So in the meantime, that happens and whatever happens in that case has absolutely no impact on his claims in this case and vice versa. You're claiming that Dr. Hopper was led to believe that these arbitrators were employees of AAA. Yes, sir. That they were neutral. Yes, sir. That they were beholden to no one, that they worked for AAA. Yes, sir. And he finds out that that's not quite the case. That is correct. So he's only suing for that issue, that they advertise that they're neutral, not beholden to anybody, and that's not the case. That is correct. And I'll remind the judges that at this stage, this is merely at the pleading stage. So we go back. When Dr. Hopper reviewed the materials, before he decided whether he was going to select the AAA or any other neutral or arbitration services provider, such as JAMS or ADR or even a private judge for that matter, he reviewed this information, he looked at it, and he understood that this is what he was supposed to be getting. This is what his bargain was going to be. He was going to get employees of AAA. He was going to get neutral arbitrators who were going to do their job. He alleges that those statements turned out to be false. Again, this is absent and separate and apart from whatever conclusion the arbitration panel ultimately reached, because the truth of those statements or the falsity of those statements would have been revealed in the process. I think Judge Gould had a question. I think I cut him off. Judge Gould, I'm sorry. Yeah. Well, what I was wondering was this. I think you've got a pretty good claim, at least it seems to me, on challenging the part of the ads that said the arbitrators would be or that led your client to think they'd be independent employees of the AAA and not independent contractors. But on the claim that the ads said they'd be neutral, I think it's a little more difficult in my mind, because that seems to tie in possibly with whether they're biased or not. And if they're biased, it sounds like it could be an arbitral consideration. So what I wondered was this. Are there any cases in any circuit that have adopted that have addressed this precise issue? No. I realize they're on the standard about whether part of the decision is challenged. But on this issue, is there anything? Thank you, Your Honor. I understand the question. We have found no case that's directly on point, and I suppose that's why we're here today. In order to sort of get to where we need to be, I think the focus is that the lower court actually used a doctrine that has a standard. There is a port of entry you have to establish and lay forward. For example, in this case, the judge 100 percent relied on the doctrine of arbitral immunity and didn't actually use the elements for that test to get to the answer. Instead, it was sort of a foregone conclusion saying, well, because ultimately you're talking about bias, we should dismiss this case. But that's not the test for arbitral immunity. And, again, focusing on the conduct here, the act, we're talking about a purely commercial act. It's advertisement. It's the quintessential commercial act. Counsel, I understand the argument. I think it's a pretty good one as to the liability. But I still have in my mind what about, like, how would you prove damages if you're right, that the ads were misleading without putting in evidence that particular arbitrators were biased? The result of the arbitration turned out wrong from your perspective. Yes, thank you. The issue of damages ‑‑ I'm sorry. It appears that I'm out of time. No, you may answer Judge Gold's question. I apologize, sir. The issue of damages here is that it really comes down to the claims that remain. That would be with the California 17-200, 17-500. Damage here would be limited to his restitution. So how would we claim damages? How would we be able to prove the facts of the misstatement? Is that what you're asking? Would there be a jury instruction? Would this be tried to a jury? And if there's going to be a jury instruction, what would it say? The jury instruction would be consistent with those available under 17-200 and 17-500, which are whether the statements made are false or misleading under the UCL. And the jury instruction would be consistent. I don't think there would be a modification here because the claims already afford one. So the issue of bias in this case, because there's a potential, I guess, is what the court is asking. What would the instruction be on damages? The damages would be ‑‑ I'm sorry. If any or whatever. Yes, thank you. The instruction would be that what would be the amount that Dr. Hopper would be entitled to as far as restitution? That would be the jury instruction. Would he be entitled to more than what he paid for the service? Not under the UCL. I mean, there's a possibility of some injunctive relief, but we're not seeking that at this point. All right. Thank you, counsel. Thank you. May it please the Court, my name is Stephen Backus. I represent the American Arbitration Association. Your Honor, the district court's order finding that appellant's complaint is barred by the doctrine of arbitral immunity should be affirmed. I'd like to emphasize three points. One, that this is an attack on the national roster. The AAA maintains the national roster and its maintenance of the roster and the arbitration rules as to how they are appointed and selected is an integral part of the arbitration process. Therefore, the process and the maintenance of the national roster is protected by the rule of arbitral immunity. Second, plaintiffs claim that all of the arbitrators, not just the ones appointed, but every arbitrator on the national roster, 7,000 are biased, after his appointed arbitrators had made a ruling that he didn't like, is per se a collateral attack on the arbitrator's decisional process. Last, a plaintiff's exclusive remedy under the Federal Arbitration Act is not to sue the sponsoring organization, but to file a motion to vacate the award. That was done, and he had that opportunity. Does the American Arbitration Association have competitors in the industry? Certainly. And does it advertise about itself in order to attract consumers? One of the problems in this complaint is that they use the term advertise. They use the word direct mail. They use the word websites. Can you answer my question? Yeah. We don't know what they're referring to in this complaint because they never say it. They never refer to what direct mail. Does the AAA advertise or not? They publish their list of roster of nationals. That is not advertising because in arbitration. It says nothing else? It just says here's our neutrals? In this case, I don't know what they're referring to because it's not in the complaint. Generally, they maintain a website, and they have their list of arbitrators. It includes engineers. It includes bankers. Many people in many different disciplines, architects. There's a list of people because the people select their own arbitrators for the case and the issues in that case. Does that advertisement or list give the impression that these engineers and so forth work for AAA? Absolutely not. That's one of the things. Does it say they're independent contractors? It does. In this case, there is a list of arbitrators, and it has their backgrounds. That's relevant to the selection process. There is nothing that I know of and nothing in the complaint indicating that there is any intimation that they are full-time employees. Well, the allegation in the complaint is that the neutrals on its roster, contrary to representations that AAA makes in its advertising, the neutrals on its roster or network are not AAA employees, but instead are independent contractors hired for the occasion who work in other jobs or for other arbitration associations or even have their own companies. Certainly. That's the way it is in almost all sponsoring agencies throughout the country to my knowledge. It would be completely impossible or practical to hire all of these people. Some aren't used for years at a time. Well, that's not how all of those work. I mean, I know, for example, that JAMS has its own roster of neutrals that work for it, and they're advertised as JAMS neutrals. In this case, the statement that they misrepresented that they were employees is created by plaintiff by saying that if they were neutral, they must have been full-time employees. They've created a syllogism, if you will, saying that all non-salaried arbitrators are biased. It's unsupported. It's not logical. But they say all non-salaried arbitrators are biased. My arbitrators that have already been appointed in my case are not salaried employees. Therefore, my arbitrators must be biased. Now, this was raised after the arbitrators in the case, three retired judges, had already made a ruling that Dr. Hopper did not like. And so, but the allegation itself comes from this syllogism. He makes the idea that if you're not full-time employee, every arbitrator on the panel must be biased. But it's completely unsupported, its opinion, and it can't sustain this case. But this was dismissed on 12B-6? I'm sorry? What was this dismissed on? I mean, has there been any litigation in this case, any discovery? No, we filed the motion. The motion to dismiss was our first plea. Okay, it's 12B-6. Well, certainly they would have to prove that allegation, wouldn't they? And that they were harmed by it. They have had the opportunity to file a motion to vacate if, in fact, the arbitrators, the three judges in their particular case, did anything inappropriate or were biased. They've had the opportunity. The judge denied the motion on all accounts in its entirety. You'd be giving them a second bite at the apple. I don't know why jurors would be able to determine this when a judge was looked at a motion to vacate and found that there was no grounds to vacate the award. But the claim itself that all arbitrators who are not full-time employees are biased can't be ---- Counsel? Yes. Could I see this? What's the standard for when an arbitral award can be vacated? They're spelled out in, I think, Rule 10. It says that they've alleged corruption, partiality. I have it, but I don't know all of them. But they did allege that it should be set aside for partiality, fraud, corruption by the arbitrators, and it was denied. There are other standards. I could get it out of Rule 10. But it's evident bias. And if there was no evident bias by these particular arbitrators, I don't know why Dr. Hopper would be given the opportunity to prove that all of the other 7,000 arbitrators not salaried by the AAA are also biased. Dr. Hopper is simply saying the following, as I understand it. He's saying, had I known. That these people were not employees of AAA, I might have gone to jams. That's what he's saying. I was led to believe that these people are employees of AAA, unbiased, not beholden to anybody, and it turns out that may not quite be the case. I guess you have to think, if someone just says these are arbitrators, whether it's rational to assume that, well, they can't be fair if they're not full-time employees. Is that a rational conclusion? Well, since you filed a 12B6 motion, we're not quite sure everything the doctor's claiming. I'm sorry? Since you filed a 12B6 motion, we're not sure everything the doctor's claiming. We're having to speculate that's what he's claiming. There was no intimation and there was nothing in the complaint indicating that these are anything in the way of full-time employees or independent contractors. What's important in this case is that if that was even a concern of Dr. Hopper or any party participating in arbitration, they could certainly ask. Dr. Hopper didn't ask. He didn't ask before selecting these arbitrators, are these full-time employees? That's important to me. He didn't. He appointed them. They made a ruling against him, and at that point, he decided that all of these people who aren't salaried employees must be biased against me. I think he had the opportunity. He didn't do it. Counsel, Judge Gould, I have another question for you. My question is this. Did Dr. Hopper and the claimants against him have a role in the selection of the particular arbitrators? My recollection from practice years ago was that with AAA, parties to a dispute would indicate arbitrators agreeable to them and they'd get matched up. I don't have the details of exactly how it worked in this case. The rules are followed. Rule three is we have to maintain the national roster. Rule 12, which is incorporated into their contract, states the procedures, and the procedures are they can vary. You can always agree on arbitrators from the panel. If they don't agree on arbitrators, then they're given a list of 10 or 12 or various numbers of arbitrators who fit the criteria that they give them. Then they cross out so many, and that could vary. Usually it's three or five. And they can cross out some and then prioritize the rest. I'm going from memory here. But then the AAA will, as stated in the rule, select those with the highest numbers, the ones they consensus by priority, if I've answered the question. I don't know if that's exactly how it worked here, though. Right. I know how it used to work 20 years ago. I just didn't know if they'd changed their rules. It's in rule 12, which is part of the record. What we don't have is exactly what happened here, but there's nothing in the record to indicate that rule 12 wasn't followed. So they had a chance to select the arbitrators, make inquiries about the arbitrators. They got the chance to prioritize them under rule 12, presumably, and the ones that best fit their interests and their review were selected. But there was nothing in there saying they're full-time employees. That critical fact has simply been thrown into the mix because he assumed, Dr. Harper says he assumed it, because it's necessary. But it's not necessary. Rationally, logically, it's not necessary. Unless you assume that anyone who's not a salaried employee, any retired judge, is naturally biased. All right. Counsel, you're well over your time. Okay. Thank you very much. Thank you, Your Honor. I'll give you a couple minutes for rebuttal, if you have something, because I let counsel go over, too. Yes, Your Honor. Good morning. My name is Corey Sorrell, and I also represent the appellant, Dr. Douglas Hopper. At this point, we'd like to cede any remaining time we might have. Okay. Thank you. Thank you. Hopper v. AAA will be submitted.
judges: Wardlaw, Gould, Collins